# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 2000 Session

## STATE OF TENNESSEE v. THOMAS EDWARD FORD

**Direct Appeal from the Circuit Court for Warren County**
**No. F-7601, Charles D. Haston, Judge**

---

**No. M1999-2362-CCA-R3-CD - Filed October 13, 2000**

---

The appellant, Thomas Edward Ford, was convicted of Class C felony aggravated assault and Class D vandalism. The Circuit Court of Warren County sentenced the appellant to five years for aggravated assault and two years for vandalism. The sentences were ordered to run consecutively. Upon appeal, the appellant raises the following issues for review: (1) propriety of the five-year sentence; (2) imposition of consecutive sentences; (3) sufficiency of the evidence for aggravated assault; and (4) misleading jury instruction. After review, we find no error. Accordingly, the judgment of the Circuit Court of Warren County is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J. and NORMA MCGEE OGLE, J., joined.

Bernard K. Smith, McMinnville, Tennessee, for the appellant, Thomas Edward Ford.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Todd R. Kelley, Assistant Attorney General, Dale Potter, District Attorney General, and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant, Thomas Edward Ford, was convicted in the Circuit Court of Warren County on three counts: (1) aggravated assault with a deadly weapon; (2) aggravated assault by causing serious bodily injury; and (3) vandalism over $1,000. The trial court sentenced the appellant to five years for aggravated assault and to two years for vandalism.[1] The trial court further ordered that the

---

[1]In a "Sentencing Opinion" filed by the court, the following ruling is noted: "The two aggravated assault convictions merge into one as they arise out of the same course of events." Subsequent to this ruling, the trial court entered separate judgments of conviction for both aggravated assault by use of a deadly weapon (Count 1) and

(continued...)

sentences run consecutively, resulting in an effective sentence of seven years. On appeal, the appellant asserts the following errors: (1) The trial court erred in sentencing the appellant to five years for the aggravated assault count; (2) The trial court erred in ordering the appellant's sentences to run consecutively; (3) The trial court erred in convicting the appellant for aggravated assault because there was no evidence that the appellant ever struck the victim with the bat; and (4) The trial court's jury charge was confusing and misleading.[2] After review, we find no error. Thus, these issues are without merit, and the judgment of the Circuit Court of Warren County is affirmed.

## Background

In 1993, Linda Ford was involved in a romantic relationship with David Nunley. Soon thereafter, Linda became pregnant with Nunley's child and gave birth to a baby girl named Chelsea. Nunley and Linda never married. In July of 1994, Linda married Thomas Edward Ford, the appellant. At the time of their marriage, Chelsea was approximately six months old.

On November 16, 1997, the appellant and his wife, Linda, helped a friend move a storage building. During this time period, the appellant consumed two beers. On this particular day, four-year-old Chelsea was with her father, Nunley, for visitation. As the appellant and Linda were driving home to meet Nunley for the purpose of picking up Chelsea, the appellant began asking Linda questions about Nunley. In response to the appellant's questions, Linda replied, "Nunley has been good to me and the kids about loaning us a vehicle and about helping us get a home." The appellant became enraged at Linda's response, shoved her against the door of the truck, and informed her that he was going to "whip" Nunley when he arrived to drop Chelsea off at their home.

When the appellant and Linda arrived at their house, Nunley was already there. Nunley was sitting in his vehicle and Chelsea was in his lap. The appellant ran over to Nunley's vehicle, jerked open his truck door, and began hitting Nunley through the driver's side window. At some point, Linda was able to retrieve Chelsea from Nunley's vehicle and left the scene. The appellant sprayed mace in Nunley's face and continued to punch and kick him. The appellant then took a pocketknife and slashed all four of the tires on Nunley's vehicle. He then returned to kicking and beating Nunley. The appellant next retrieved a baseball bat from his car and began to break all of the windows out of Nunley's 1989 GMC Jimmy. The appellant threw the bat down and returned to punching and kicking Nunley. The blows left Nunley with substantial injuries, including a broken left arm. Throughout the encounter, Nunley did not fight back and refused to exit his vehicle for fear of his life.

---

[1](...continued)
aggravated assault causing serious bodily injury (Count 2).

[2]A fifth issue was raised in the appellant's brief challenging the indictment's validity based upon an improperly sworn or appointed jury foreman. This issue was withdrawn.

Several minutes later, the appellant calmed down and convinced Nunley to go inside the house and clean up. Nunley tried to use the phone, but was unable to dial the number. The appellant then offered to drive Nunley where he needed to go. Nunley eventually accepted the offer, and the appellant drove Nunley to a nearby relative's home. Nunley's relative took him to the emergency room, where Nunley was treated for his injuries.

## I. Sentencing on Aggravated Assault

The appellant contends that the trial court erred by sentencing him to five years for aggravated assault. Specifically, he asserts that the trial court placed improper emphasis on his past criminal record since "those offenses occurred more than eleven years before the incident in this case." Second, he asserts that the trial court erred by relying on "uncharged assaults" which were not explored by the State, but were mentioned briefly at the sentencing hearing. Third, the appellant argues that the trial court erred by considering the appellant's violation of the trial court's order not to visit with or contact Linda or Chelsea. Lastly, the appellant contends that the trial court erred by finding that no mitigating factors were supported by the evidence presented. After review, we find all of these issues to be without merit.

The appellant bears the burden of establishing that the sentence imposed by the trial court was erroneous. State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Boggs, 932 S.W.2d 467, 473 (Tenn. Crim. App. 1996); State v. Fletcher, 805 S.W.2d 785, 786 (Tenn. Crim. App. 1991). Appellate review of a sentence is *de novo*, with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169. In determining whether the appellant has carried the burden, this court must consider the evidence received at the trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments of counsel, the nature and characteristics of the offenses, existing mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation. Ashby, 823 S.W.2d at 169; Tenn. Code Ann. § 40-35-210.

In the present case, the appellant was convicted of aggravated assault, a Class C felony. Tenn. Code Ann. § 39-13-102(d). Because he is a Range I Standard offender, the appropriate sentencing range for the appellant on the aggravated assault conviction is three to six years. Tenn. Code Ann. § 40-35-112(a)(3). Furthermore, the presumptive sentence would be the minimum sentence in that range if there are no enhancing or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). Thus, the presumptive starting point in the present case is three years. If there are enhancing and mitigating factors present, the trial court must "enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence within the range as appropriate for the mitigating factors." Tenn. Code Ann. § 40-35-210(e). The appellant's sentence is not determined by the mathematical process of adding the sum total of enhancing factors present then subtracting from this figure the mitigating factors present for a net number of years. Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). The weight to be afforded mitigating and enhancement factors derives from balancing relative degrees of

culpability within the totality of the circumstances of the case involved. <u>State v. Boggs</u>, 932 S.W.2d at 476; *See also* <u>State v. Marshall</u>, 870 S.W.2d 532, 541 (Tenn. Crim. App. 1993).

The appellant contends that the trial court placed improper emphasis on his past criminal record, since his last conviction occurred more than eleven years before the present incident. A sentence may be enhanced if the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). In the present case, the appellant's past criminal history included (1) a 1980 misdemeanor conviction for assault; (2) a 1986 conviction for second-degree murder; (3) a 1986 misdemeanor conviction for throwing a missile calculated to produce injury; (4) a 1986 malicious mischief conviction, and numerous traffic offenses. There is no set time period by which an appellant's previous convictions become moot, for purposes of Tenn. Code Ann. § 40-35-114(1). Instead, the trial court has great discretion when considering and weighing past offenses during sentencing. Even if the trial court weighed this factor more heavily than the appellant feels appropriate, the court's decision to do so is proper given the discretion allowed a trial court in considering enhancement factors. <u>State v. Moss</u>, 727 S.W.2d 229, 238 (Tenn.1986); <u>State v. Boggs</u>, 932 S.W.2d at 475. Since the record clearly supports the trial court's decision to enhance the appellant's sentence based on his prior criminal history, we find it unnecessary to address the appellant's allegations that the sentence was improper because the trial court considered "uncharged assaults." Enhancement factor (1) is unequivocally met.

The appellant next contends that the trial court erred by considering his violation of the trial court's warning. Following his conviction, the appellant was warned by the trial court to stay away from Linda and Chelsea. On Christmas Eve, after conviction and before sentencing, the appellant knocked on Linda's back door and informed her that he was leaving presents for Chelsea on the front porch. Such conduct was in direct violation of the trial court's order. In the trial court's sentencing opinion, it lists the appellant's conduct as an example of the appellant's "complete lack of remorse and ongoing hatred for the victim and the defendant's wife." We do not find that the trial court's inclusion of this information was for the purpose of enhancing the appellant's sentence, but rather was included primarily as a condition of bail pending appeal. Indeed, the record reflects that the appellant's bond was revoked based upon a violation of this no-contact condition. Consequently, this issue is also without merit.

Finally, the appellant asserts that the trial court erred by finding that no mitigating factors were present. Specifically, the appellant contends that the trial court should have utilized the following factors to mitigate his sentence:

    (3)      Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

    (8)      The defendant was suffering from a mental or physical condition that significantly reduced his culpability for the offense; however, the voluntary use of intoxicants does not fall within the purview of this factor;

(11)    The defendant, although guilty of the crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to follow the law motivated his conduct;

(12)    The defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime;

(13)    Any other factor consistent with the purposes of this chapter.

*See* Tenn. Code Ann. § 40-35-113. In effect, the appellant argues that factors (3) and (12) above should have been used to mitigate his sentence because "Nunley's continuous, unwarranted interference with the Fords' marriage drove [him] to commit this crime" and because "Nunley placed incredible duress" upon him. The appellant also asserts that factor (8) above should have been used because he "simply snapped." He also asserts that factor (11) above should have been used because "he had been a law abiding citizen since 1986." Finally, the appellant contends that factor (13) above is applicable because the appellant did not leave Nunley after attacking him, but "assisted Nunley by transporting him to a relative's house so that he could seek medical attention." We disagree that these mitigation factors were appropriate and find no error with the trial court's ruling.

First, there was no proof in the record that any "improper" relationship existed between Nunley and the appellant's wife. Accordingly, it can not be said that the appellant's sentence should be mitigated based solely on his defense that he "thought" something was going on between his wife and Nunley. Second, the appellant asserts he was under duress. The record simply does not support this position. The appellant was suspicious of an affair. Without any proof or provocation, the appellant went up to Nunley and began beating him senselessly. There was no duress under these circumstances. Third, the appellant contends that he is entitled to mitigation factor (8) because he "simply snapped." The appellant was not suffering from a mental or physical condition, but simply became angry. He understood what he was doing and even told his wife what he intended to do several minutes before they arrived. Fourth, the appellant's assertion that he is entitled to mitigation factor (11) because he has been a law abiding citizen since 1986 also fails. Although it is true that the appellant had not been convicted of a crime since 1986, the appellant did, however, testify that he had been involved in numerous barroom fights. Moreover, at the time of this incident, the appellant had been discharged from his parole on the murder conviction for less than five months. Additionally, this crime was not committed under unusual circumstances. Therefore, mitigation factor (11) would not apply. Finally, the appellant asserts that mitigation factor (13) should apply because he drove the victim to a relative's house after he severely beat him. We are not persuaded that the appellant's "kindness," which followed the victim's unprovoked beating, supports mitigation. Therefore, these issues are without merit and the sentence of five years for aggravated assault was proper.

## II. Consecutive Sentencing

The appellant argues that the trial court erred by ordering his aggravated assault sentence to be served consecutively to his sentence for vandalism. Specifically, he asks this Court to reverse the trial court's judgment and order that the sentences run concurrently.

With reference to the particular facts of this case, Tenn. Code Ann. § 40-35-115(b)(1)-(7) provides that the court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (2)　　The defendant is an offender whose record of criminal activity is extensive;
>
> (4)　　The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is great.

This court's review of the manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d). Likewise, the appellant bears the burden of proving the impropriety of the consecutive nature of the sentences imposed. Sentencing Commission Comments, Tenn. Code Ann. § 40-35-401(d).

Before consecutive sentences can be imposed, the trial court must (1) first determine that one or more of the statutorily enumerated criteria of Tenn. Code Ann. § 40-35-115 exists, *see also* Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976); and (2) if the defendant is found to be a dangerous offender, find that the aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity of the offender. State v. Wilkerson, 905 S.W.2d 933, 937 (Tenn. 1995); *See also* State v. Lane, 3 S.W.3d 456 (Tenn. 1999)(holding Wilkerson factors were limited to sentencing of "dangerous offenders"). Notwithstanding proof of these criteria, a sentencing court retains the discretion of imposing consecutive sentences. On appeal, the exercise of the trial court's discretion is afforded great weight, provided the court correctly applied the principles of consecutive sentencing. Moreover, in determining whether the trial court providently exercised its discretion, "the overriding concern" is the fairness of the resulting sentence under all the circumstances.

In its sentencing opinion, the trial court sentenced the appellant to consecutive sentences and reasoned in part as follows:

> The defendant's sentences of 5 and 2 years shall be served consecutively one to the other. The court finds by a preponderance of the evidence that the defendant is an offender whose record of criminal activity is extensive. He has no hesitation to commit a crime in which the risk to human life is high. He has previously committed murder. In the case at bar he assaulted an individual with such violence as to break a bone and displayed a deadly weapon during the course of the assault...Defendant indicates no remorse for his offenses and believes he was justified in committing this assault and murder. He poses an ongoing danger to the community.

Although the trial court's findings allude to both classifications of "extensive criminal history" and "dangerous offender," the record clearly supports the finding that the appellant is a dangerous offender. As such, any review of the appellant's classification as an offender possessing an extensive criminal history is unnecessary. Moreover, although the trial court appeared to co-mingle the

classifications, we find the court's references to the appellant's criminal history were primarily made within the context of finding the appellant a dangerous offender. Clearly the trial court was warranted in considering the fact that the appellant was previously convicted of assault and murder when finding him to be a dangerous offender.

The appellant argues that the trial court erred by finding that the appellant had no hesitation to commit a crime where the risk to human life is high. Specifically, the appellant states, "Here Defendant punched and kicked Nunley several times, and destroyed his car with a baseball bat. These actions, while certainly reprehensible, do not evidence an intent to place human life at risk." We disagree. The appellant decided he was going to "whip" Nunley during his drive home. The appellant followed through with his plan and severely beat Nunley without any provocation or reason. The appellant also risked injuring or killing Chelsea, as she was sitting in Nunley's lap when the appellant started beating him. The appellant then proceeded to take a baseball bat and demolish Nunley's car. In the process, he broke Nunley's arm. The trial court did not err by finding that the appellant exhibits no hesitation to commit crimes where the risk to human life is great.

Finally, the appellant asserts that the trial court erred by finding that the appellant poses an ongoing danger to the community. Specifically, the appellant asserts that "this crime was prompted by a discrete, unusual set of circumstances, Nunley's persistent and unwarranted interference with the Ford's marriage over a number of years." We disagree with the appellant's assertion and once again find the trial court's ruling correct. This incident was not "prompted by a discrete, unusual set of circumstances," as the appellant suggests. Rather, the appellant decided to beat a man senselessly because he had a suspicion that his wife and the man were having an affair. The appellant's past convictions, along with the present incident, clearly reveal that the appellant is an ongoing danger to the community.

Sentencing is inescapably a human process that neither can nor should be reduced to a set of fixed and mechanical rules. State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995). The trial court imposed consecutive sentences of five years for the aggravated assault charge and two years for the vandalism charge, for an effective sentence of seven years. Upon *de novo* review, we conclude that the imposition of consecutive sentences was appropriate, as the proof established that the aggregate sentence imposed is reasonably related to the severity of the offenses and was necessary to protect the public from further criminal acts of this appellant. Accordingly, this issue is without merit.

### III.  Sufficiency of the Evidence

The appellant argues that his conviction for aggravated assault must be reversed because "there is no clear evidence that [he] struck Nunley with the bat." In effect, he argues that the evidence produced at trial was insufficient to convict him of aggravated assault. We disagree.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the

evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this Court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally* State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S.Ct. 743 (1995); Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S.Ct. 1368 (1993).

In the present case, the appellant argues that his conviction for aggravated assault cannot stand because there was no "clear evidence" that he ever struck Nunley with the baseball bat. The appellant was convicted of aggravated assault under Tenn. Code Ann. § 39-13-102(a)(1)(B), which provides that a "person commits aggravated assault who intentionally or knowingly commits an assault as defined in § 39-13-101 and uses or displays a deadly weapon." Thus, there is no requirement under Tenn. Code Ann. § 39-13-102(a)(1)(B) that the appellant must actually use the bat to be convicted of aggravated assault. The fact that the appellant displayed the baseball bat is sufficient to convict. When asked whether he was actually hit by the baseball bat, the victim testified, "as far as I know, the bat hit me right there [in the left arm]. It had to, because it was in and out of the cab, and he tried it several times." Moreover, the appellant himself admitted to using the baseball bat during this incident. Consequently, a rational trier of fact could have found the appellant guilty of aggravated assault under Count 1, pursuant to Tenn. Code Ann. § 39-13-102(a)(1)(B), and guilty of aggravated assault under Count 2, causing serious bodily injury, pursuant to Tenn. Code Ann. § 39-13-102(a)(1)(A). Accordingly, we find the evidence legally sufficient to support both aggravated assault convictions charged in Counts 1 and 2.

### IV. Jury Instructions

The appellant argues that the court's jury charge was "hopelessly confusing and misleading to the jury." In response, the State asserts that "while the trial court did initially misstate which count of the indictment charged the defendant with aggravated assault by causing bodily injury by use or display of a deadly weapon the issue was clarified by the Assistant District Attorney." At trial, the following dialogue between the trial court and the State took place during the trial court's jury instructions:

> THE COURT:  Aggravated assault is defined thusly in the law: Any person who commits the offense of aggravated assault is guilty of the crime. For you to find the defendant guilty of this offense, the State must have proved beyond a reasonable doubt the existence of the

following essential elements. Under Count No. 1. you have got to find that the defendant - all right. I am going to re-start that a little bit. Ladies and gentlemen of The Jury, for you to find this defendant guilty under Count No. 1, it is incumbent upon the State to prove to you these elements: (1) That the defendant acted intentionally or knowingly causing bodily injury to another. Under Count No. 2, aggravated assault by display of a deadly weapon, the State must prove to you beyond a reasonable doubt this element: That the defendant intentionally or knowingly caused another person to reasonably fear imminent bodily injury and that the defendant used or displayed a deadly weapon.

MR. MINOR:     You may have gotten them backwards.

THE COURT:     Okay. Now, under Count 1 -

MR. MINOR:     Deadly weapon count is first. I think you correctly stated the law.

THE COURT:     Okay. Under Count 2 that the defendant caused serious - that is under Count 1- right - caused serious bodily injury to another. That is Count 1.

MR. MINOR:     No. Count 1 is did cause bodily injury by use of a deadly weapon. Your honor, I have the statute that reads more clearly.

THE COURT:     Yeah. Just give me the statute, and let's see if that is not more clear. All right. I will try again. Any person who commits the offense of

aggravated assault is guilty of a crime. For you to find this defendant guilty of this offense, the State must have proved beyond a reasonable doubt the existence of the following essential elements: That the defendant intentionally or knowingly commits an assault and causes serious bodily injury to another or uses or displays a deadly weapon or recklessly commits an assault and causes serious bodily injury to another or uses or displays a deadly weapon.

The appellant contends that because the trial judge read straight from the statute, Tenn. Code Ann. § 39-13-102, and "did not explain that the 'deadly weapon' type of aggravated assault formed the basis of Count I and the 'serious bodily injury' type formed the basis of Count II," that the charge was confusing and misleading to the jury. We disagree.

Although, the trial judge did initially interchange Counts 1 and 2, the State pointed out the mistake, and the trial judge corrected the error by correctly stating the law.[3] More importantly, however, is the appellant's failure to include in the record the written instructions submitted to the jury for their use in deliberations. The written charge would have contained the trial court's instructions as to the essential elements required to be proven for the alternative counts of aggravated assault. Absent those jury instructions, we must presume that the trial court's written charge was correct. Therefore, this issue is without merit.

## CONCLUSION

The evidence presented at trial was sufficient to find the appellant guilty of either indicted count of aggravated assault, and the sentence imposed by the trial court was proper. Furthermore, the jury charge was not misleading or confusing. Accordingly, all issues presented by the appellant are without merit. Therefore, we affirm the judgment of the Circuit Court of Warren County.

_____
DAVID G. HAYES, JUDGE

_____

[3] Initially, the trial court interchanged Count 1 with Count 2. Count 1 should have charged the defendant with aggravated assault by the use or display of a deadly weapon, Tenn. Code Ann. § 39-13-102(a)(1)(B). Count 2 should have charged the defendant with aggravated assault by causing serious bodily injury, Tenn. Code Ann. § 39-13-102(a)(1)(A). The trial judge later corrected his mistake and correctly stated the law.

-10-